LERNER SHOPS OF CONNECTICUT, INC., ET AL. *v.* TOWN OF WATERBURY

KING, MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued June 6—decided July 25, 1963

*John D. Mahaney*, assistant corporation counsel, with whom was *Harry F. Spellman*, corporation counsel, for the appellant-appellee (defendant).

*Fred B. Rosnick*, with whom were *Andrew D. Dawson* and, on the brief, *H. John Weisman*, for the appellees-appellants (plaintiffs).

KING, J. The complaint in this action was in two counts. The first count was an appeal to the Court of Common Pleas, under General Statutes § 12-118,[1] taken by Lerner Shops of Connecticut, Inc., hereinafter referred to as Lerner, and Louis M. Cohen, Trustee, hereinafter referred to as Cohen, from the refusal of the board of tax review of Waterbury to reduce the assessment, as of May 1, 1960, on a parcel of land and the building thereon, owned by Cohen in his capacity as trustee. Lerner rented and occupied, for retail mercantile purposes,

---

[1] "Sec. 12-118. APPEAL FROM BOARD OF TAX REVIEW. Any person claiming to be aggrieved by the action of the board of tax review in any town or city may . . . make application, in the nature of an appeal therefrom, to the court of common pleas . . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . ."

the land and building which Cohen owned. By the terms of the lease, Lerner agreed to pay all taxes levied on the premises.

The second count, which, when taken in connection with the claims for relief, is confusingly drawn, seems to have been treated, at least by the plaintiffs, as (a) an application under § 12-119 [2] for relief from a wrongful assessment of the property, and (b) a complaint seeking a declaratory judgment that all taxes based on the May 1, 1960 grand list of Waterbury are illegal, and, as ancillary relief, an injunction against the collection of any tax based on the May 1, 1960 assessment of the property in question.

I

We first consider the issues properly raised in the first count. In that count, the plaintiffs alleged that the valuation of the land and building, as determined by the town assessor, was neither the fair market value thereof on May 1, 1960, nor a value arrived at by the application of a uniform percent to the fair market value, but was grossly excessive, disproportionate and unlawful. A reduction in the valuation of the property to its proper assessment value on May 1, 1960, was sought.

The court, apparently acting under the first count, did reduce the assessed value of the property

[2] "Sec. 12-119.  REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable . . . , or that a tax laid on property was computed on an assessment which . . . was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof, prior to the payment of such tax, may . . . make application for relief to the court of common pleas . . . . [T]he court of common pleas shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains . . . ."

in question. The judgment does not indicate that any action was taken under the second count. In a cross appeal in this court, the plaintiffs claim, among other things, that the assessed value of the property should be lower than the value fixed by the trial court. The defendant, in its appeal, claims that (1) neither plaintiff is entitled to seek relief under the first count because neither is an aggrieved person within the requirements of General Statutes § 12-118 and (2) even if it is assumed that each plaintiff was so aggrieved, neither has established that the assessments of real property in Waterbury, as of May 1, 1960, actually were on a basis of 51 percent—the percentage used by the court—of the then fair value of the property.

We now consider the question of aggrievement. Anyone claiming to be aggrieved by the doings of assessors in assessing his property may appeal to the board of tax review, which may correct the assessment to conform to the law. § 12-111. In the complaint, Cohen alleged, inter alia, that he had appeared before the board of tax review by his attorney, who offered to be sworn, was sworn and answered all questions dealing with the trustee's taxable property. Since there was no question as to Cohen's ownership of the property, this allegation, which was admitted by the defendant in its answer, adequately set up the facts essential for aggrievement within § 12-111 and § 12-113 as amended by Public Acts 1959, No. 436. As Cohen was properly before the board of tax review, and received an adverse decision from it, he was aggrieved by its action and could properly appeal under § 12-118 to the Court of Common Pleas. The defendant's further claim that in fact Cohen did not take the appeal to the Court of Common Pleas

is disposed of by the unattacked findings to the contrary and by the appeal process itself. The defendant's claim that Cohen, as trustee, was not an aggrieved person and not entitled to take this appeal is groundless.

The defendant's contention that Lerner is not an aggrieved person within the meaning of § 12-118 has merit. The defendant correctly claims that real property taxes are assessed against the owner; that he is the one obliged to pay the tax; and that, since no tax is imposed on a lessee, there is nothing in the complaint from which it could be concluded that Lerner was aggrieved within the terms of §§ 12-111 and 12-113 by any assessment of the property. *Montgomery* v. *Branford,* 107 Conn. 697, 701, 142 A. 574; see also §§ 12-66 (a), (c). Since this proceeding was properly brought and prosecuted by Cohen, it can be disposed of without regard to Lerner, in the same manner as if Cohen had been the sole plaintiff. The technical error of the trial court in rendering judgment for Lerner, as well as for Cohen, instead of for Cohen alone, was actually harmless.

This determination leaves for consideration the defendant's second claim, that is, that the assessment value, as fixed by the court below, was erroneous. Aldro Jenks, who has been the sole assessor for Waterbury since 1945, prepared the grand list of May 1, 1960. He fixed the assessment value of the land and building in question, as of May 1, 1960, at $310,000. The court, however, concluded that the assessment value of the property should be $226,440.

Prior to the enactment, in 1957, of certain amendatory legislation, all property was required to be assessed at 100 percent of its fair value as of the

assessment date. *E. Ingraham Co.* v. *Bristol,* 144 Conn. 374, 377, 132 A.2d 563. Following the decision of that case, what is now § 12-64 was amended so as to provide that all property should be "liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors." See *E. Ingraham Co.* v. *Bristol,* 146 Conn. 403, 405 n., 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352. In order properly to carry out the mandate of § 12-64 in its present form, three steps are required. (a) The fair value of property as of the assessment date must be determined.[3] (b) A percent, not exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town.[4] (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date. Admittedly, Waterbury wholly failed to carry out this statutory mandate and, indeed, ignored it. Principally because of this failure to comply with the terms of the statute, we have this case.

[3] We have pointed out that the terms actual valuation, actual value, market value, market price and fair value are synonymous. *Sheldon House Club, Inc.* v. *Branford,* 149 Conn. 28, 33, 175 A.2d 186, and cases cited; see also § 12-63. Probably, the term fair value is the preferable one to use, since it emphasizes the result to be achieved rather than the means by which that result is to be attained. See cases such as *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 A. 91.

[4] Any ambiguity in § 12-64 as to the power of the assessing authority to determine the uniform percent to be applied to the fair value of real property in fixing the assessment value is resolved by §§ 12-26, 12-71, 12-111 and 12-115.

According to an unchallenged finding, Jenks determined and established assessments of real property subject to taxation on the grand list of May 1, 1960, at 100 percent of the 1945 fair market value of the property. Although it appears to have been undisputed that the building in question was constructed in 1949, the court found as a fact that the assessment as of May 1, 1960, of the plaintiff's total property was based on 100 percent of its 1945 fair market value. We construe that finding to mean, as far as the building is concerned, 100 percent of the fair value the building would have had, had it been in existence in its 1960 condition on the 1945 assessment date.

Cohen would be entitled to relief under § 12-118 if he could prove that his property was bearing a disproportionately high tax burden because of the defendant's failure to comply with § 12-64. *White* v. *Portland,* 63 Conn. 18, 21, 26 A. 342; *Sibley* v. *Middlefield,* 143 Conn. 100, 105, 120 A.2d 77; see also *Greenwoods Co.* v. *New Hartford,* 65 Conn. 461, 463, 32 A. 933. In effect, he claims to have sustained his burden by proof that the assessment ratio properly to be applied was 51 percent and that application of this ratio to the actual fair value of the property as of May 1, 1960, would result in a lower assessment.

If the assessor had taken a uniform percentage of the fair value of the property on the assessment date as the assessment value, as required by § 12-64, and if that percentage amounted to 51 percent of the fair value, the resolution of the issues in this case would present little difficulty. *White* v. *Portland,* supra, 22. But Jenks, when called as a witness, disclaimed any conscious use of a uniform percent other than the remarkable one of 100 per-

cent of the 1945 values for all property both old and new, including, in this case, Cohen's building, which was not constructed until 1949. In view of this testimony, the defendant maintains that the assessments of real property in Waterbury on the May 1, 1960 grand list were not made on a basis of 51 percent or any other uniform percent of their fair value as of May 1, 1960. From this claim, the defendant argues that no such ratio could properly have been applied by the court below and that in consequence its judgment was erroneous. Even if it be conceded, as claimed by the defendant, that in 1945 100 percent of the then fair value was uniformly used as the assessment value, it is obvious that such an assessment value would not be the equivalent of any uniform percentage of the 1960 fair values of property, as required by the statute for a legal assessment. The fact is that no uniform percentage of the fair value on May 1, 1960, as is required and envisioned by § 12-64, was consciously used. "The city in substance argues that the picture is too chaotic to permit any relief. It would be a sad reflection upon the judiciary and indeed upon all government if the rights of a taxpayer were to be diminished in proportion to the violence of the assault upon them." *In re Kents,* 34 N.J. 21, 30, 166 A.2d 763; *Brooks Building Tax Assessment Case,* 391 Pa. 94, 98, 101, 137 A.2d 273. When a uniform percentage, although required by statute, is not in fact followed by the assessing authorities, it would of course be unreasonable and inequitable to deny relief to a taxpayer who fails to sustain the impossible burden of proving the application of a uniform percent when in fact there was no such application. "[T]he law never requires the impossible." *Underwood Typewriter Co.* v. *Hartford,* 99

Conn. 329, 337, 122 A. 91. Under § 12-118, the court is empowered, in an appeal from the board of tax review, to grant such relief as "to justice and equity appertains, upon such terms and in such manner and form as appear equitable."

The crucial facts of the *Kents* case, supra, are very similar to those in this case. In *Kents*, it was decided that a taxpayer who complained of being subjected to an unequal tax burden was entitled to establish the injury by such means as were within his practical reach. In that case, the taxpayer was permitted to offer evidence of an average, as distinguished from a uniform, ratio of the assessed values of properties to their selling prices, and it was held that, if that evidence was credited by the trial court and found by it to be adequate to prove a fair approximation of the average ratio or percent of the fair value actually obtaining in the taxing district, an individual assessment could properly be reduced to the percentage computed from that ratio. *In re Kents,* supra, 30, 31; *Siegal* v. *Newark,* 38 N.J. 57, 64, 183 A.2d 21; see also *Baken Park, Inc.* v. *Pennington,* 109 N.W.2d 898, 899, 902 (S.D.). Of course, there may be other acceptable methods of establishing injury and a basis for relief. *Greenwoods Co.* v. *New Hartford,* 65 Conn. 461, 463, 32 A. 933; *Brooks Building Tax Assessment Case,* supra.[5] It is for the trial court, in the first instance, to determine what limits shall be placed upon the nature and extent of the evidence to be admitted, and, after its admission, whether it

[5] See also, for example, the statutory method provided in New York, discussed in *People ex rel. Yaras* v. *Kinnaw,* 303 N.Y. 224, 228, 232, 101 N.E.2d 474, and in *Matter of Wolf* v. *Assessors of Hanover,* 308 N.Y. 416, 422, 126 N.E.2d 537. With some changes, the relevant statute now appears as New York Real Property Tax Law, § 720 (3).

has sufficient probative force to warrant a finding that it is more probable than not that a particular average ratio has been established by the evidence and that such a ratio would provide a fair basis for relief. A court could not properly conclude that a particular ratio, claimed to be a fair average ratio, was a proper basis for relief unless that ratio was adequate "for practical attainment of the rough equality which is all that has heretofore been possible under any system of taxation." *People ex rel. Hagy* v. *Lewis,* 280 N.Y. 184, 188, 20 N.E.2d 386; see *In re Kents,* supra, 31.

In this case, Cohen offered evidence of the average ratio of assessment value to fair value as that ratio actually existed in Waterbury as of May 1, 1960. His evidence on this issue consisted entirely of the testimony of the witness Aldro Jenks. The court utilized this evidence in determining the proper assessment value of Cohen's property. As a first step it had to, and did, find the fair value of the property as of the assessment date, May 1, 1960. The court found that as of that date, the fair value of Cohen's building was $144,000, the fair value of his land was $300,000 and the fair value of his land and building was $444,000. It is true that the court found that as of May 1, 1960, there had been, for many years, no sales of commercial property comparable to Cohen's property. But sales value is not an exclusive method of determining fair value, especially when there have been no sales of comparable property. See cases such as *Underwood Typewriter Co.* v. *Hartford,* supra. The findings as to the fair value are not attacked. Thus, Cohen's claim before us that there was error in the court's finding of the fair value of the land as of May 1, 1960, is without merit.

The second step was to find a proper ratio or percent to apply to the fair value in order to arrive at a proper assessment value. The court found that the average assessments of real property in Waterbury as of May 1, 1960, amounted in fact to approximately 51 percent of the then fair values. This finding is fully supported by the testimony of the defendant's assessor. Jenks's long experience as an assessor gave weight to his testimony as to the average ratio of fair value reflected in the assessments on all real property in Waterbury. Indeed, Jenks testified that in his opinion the 1960 assessment value of Cohen's property amounted to approximately 51 percent of its fair value. The trial court obviously felt, as it concluded, that utilization of the average ratio of 51 percent, when applied to the fair value of the property as of May 1, 1960, would provide an equitable basis for relief. See *Greenwoods Co.* v. *New Hartford,* supra. "Mathematical perfection in taxation is unobtainable, and hence relief should not be denied merely because the result lacks absolute precision. The injured taxpayer is entitled to practical relief." *In re Kents,* 34 N.J. 21, 32, 166 A.2d 763. Cohen was forced to, and did, offer evidence to show that an average ratio was reflected in the assessments as actually made and that this ratio was about 51 percent of the fair value as of the assessment date. The court did not err in finding in accordance with this evidence.

The plaintiff Cohen complains of the exclusion of certain evidence. Even disregarding his failure to give the trial court any succinct ground for the admission of the evidence, as required by Practice Book § 155, on the merits we find no harmful error in the ruling excluding it.

One further question remains. It appears to be conceded by the defendant that on May 29, 1961, the entire tax claimed by Waterbury on the assessment of May 1, 1960, as determined by the assessor and confirmed by the board of tax review, was paid. Thereafter, on December 15, 1961, the judgment reducing the assessment value was rendered. This judgment indirectly, but necessarily, converted the payment into an overpayment. To find the amount of the overpayment, the applicable tax rate could be applied to the difference between (a) the total assessment value as fixed by the defendant's assessor and confirmed by its board of tax review and (b) the total assessment value, as reduced by the court under the first count of this proceeding. See cases such as *Greenwoods Co.* v. *New Hartford,* supra, 465. Over fifteen months after the rendition of judgment on December 15, 1961, a motion was filed, purportedly under the last sentence of § 12-118 of the General Statutes,[6] "that the judgment . . . be revised so as to provide that the defendant shall reimburse the plaintiffs for any overpayment by them of taxes on the land and building, together with interest thereon." The court denied the motion on the ground that it had been filed after the expiration of the session in which judgment had been rendered, citing *Foley* v. *George A. Douglas & Bro., Inc.,* 121 Conn. 377, 379, 185 A. 70. There was no error in this ruling. *Cichy* v. *Kostyk,* 143 Conn. 688, 695, 125 A.2d

---

[6] "Sec. 12-118. APPEAL FROM BOARD OF TAX REVIEW. . . . If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs."

483.[7] Under the next to the last sentence of § 12-118, however, a plaintiff is given a right to recover the amount of his overpayment. An apparent purpose of this sentence is to permit such a recovery either by a timely motion as authorized in the last sentence or in an independent action, even though the payment of taxes might otherwise be considered "voluntary" under the rule explained in cases such as *Sheldon* v. *South School District,* 24 Conn. 88, 92, and *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 203, 102 A. 600. See also *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 391, 126 A. 1. As a practical matter, it is hardly conceivable that this defendant would force Cohen to institute such an independent action, but if it should, it appears that he could prevail.

There is no harmful error in the judgment on the first count.

## II

We turn now to the second count. The memorandum of decision indicates that the court thought that a proceeding under § 12-119 was a declaratory judgment proceeding. This error probably stemmed from the confused pleading in the second count, especially in conjunction with the claims for relief. The memorandum of decision does clearly state that the plaintiffs should not be given any

---

[7] To avoid misunderstanding, and in the interest of good practice, it should be pointed out that it is proper, in a case such as this, that such a motion should be filed before the close of the session in which the original judgment was rendered and within the time in which an appeal may be taken. Practice Book § 378; *Morici* v. *Jarvie,* 137 Conn. 97, 104, 105, 75 A.2d 47. A hearing on the motion can then be had and, if it is granted, a corresponding modification of the judgment made. This procedure would permit an appeal to be taken to this court from the final judgment as modified. Cf. Practice Book §§ 403, 205.

declaratory judgment because of the availability of other adequate remedies. These remedies included those given by § 12-118 and, if application for relief is instituted prior to payment of the tax, as was the case here, by § 12-119. As far as the claimed failure to comply with the mandate of § 12-62 that real property be periodically revalued is concerned, the plaintiff had an adequate remedy by mandamus under the rule of *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591. It is at least open to serious question whether the allegations of the second count were adequate to support any sort of declaratory judgment under the rule of cases such as *Redmond* v. *Matthies,* 149 Conn. 423, 426, 180 A.2d 639, and *Lipson* v. *Bennett,* 148 Conn. 385, 388, 171 A.2d 83. But even if we assume their sufficiency, obviously the court wisely exercised its discretion in refusing to render any declaratory judgment for the reason it gave. Practice Book § 277 (c); *Bartlett* v. *Rockville,* 150 Conn. 428, 432, 190 A.2d 690; *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 650, 153 A.2d 828; *Scully* v. *Westport,* 145 Conn. 648, 653, 145 A.2d 742; *Holt* v. *Wissinger,* 145 Conn. 106, 113, 139 A.2d 353; 2 Anderson, Declaratory Judgments (2d Ed.) § 390; note, 11 A.L.R.2d 359, 370 § 5, 379 § 9.

Furthermore, the defendant's failure to comply with § 12-62 was irrelevant in this proceeding, the pleadings in which were appropriate only to secure relief with respect to Cohen's own property. Even if a revaluation of all real estate in Waterbury had been made within the period of 1950 and 1960, in strict conformity with § 12-62, Cohen would still be entitled to a legal assessment value on his own property as of May 1, 1960. *Slosberg* v. *Norwich,* 115 Conn. 578, 580, 162 A. 772.

The plaintiff Cohen also claims that injunctive relief forbidding the collection from him of any tax on the list of May 1, 1960, should have been granted. The short but conclusive answer is that Cohen admittedly has paid the tax as assessed so that injunctive relief against its collection would be impossible.

Since Cohen has obtained, in the judgment rendered under the first count, all the relief to which he is entitled, no reason appears for his recovery under the second count, even if we assume, without deciding, that the pleadings and proof would have supported a judgment for him under § 12-119 as an alternative to relief by appeal under § 12-118 from the doings of the board of tax review. See cases such as *E. Ingraham Co.* v. *Bristol,* 146 Conn. 403, 407, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352.

As previously pointed out, we have ourselves noted that the memorandum of decision did not clearly state that judgment should be rendered for the defendant on the second count, although that is the only reasonable construction which could be put on the court's language. The judgment file was personally signed by the judge, but it made no mention of the second count. Practice Book §§ 191, 203. It was, therefore, not a mere clerical error on the part of the clerk alone as in cases such as *Wexler Construction Co.* v. *Housing Authority,* 149 Conn. 602, 607 n., 183 A.2d 262. In this state of confusion, we are compelled to remand this case with direction to render judgment on the second count for the defendant. See cases such as *Pepin* v. *Ryan,* 133 Conn. 12, 17, 47 A.2d 846; *Morici* v. *Jarvie,* 137 Conn. 97, 105, 75 A.2d 47. Since there must be a remand, the technical, even though harm-

less, error in the rendition of judgment for Lerner under the first count should be corrected.

There is error in part, the judgment for the plaintiff Cohen, Trustee, under the first count is affirmed, the judgment for the plaintiff Lerner under the first count is set aside, and the case is remanded with direction to render judgment for the defendant as against the plaintiff Lerner under the first count and for the defendant as against both plaintiffs under the second count.

In this opinion the other judges concurred.