[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Gilbride, Tusa, Mirone, Last Spellane for plaintiff.
Greenwich town attorney for defendant.
On August 27, 1991, the plaintiffs, who are owners of 77 condominium units located in a number of condominium developments, including Ettl Park Condominiums, River Run Condominiums, River West Condominiums, Mead's Landing Condominiums, Greenwich Chateau Condominiums, Greenwich Towers Condominiums, Greenwich Lodge Condominiums, Harbor View Condominiums, The Greenwich Green Condominiums, all in the Town of Greenwich, appealed from a decision of the Board of Tax Review of the Town of Greenwich (Board) denying their requests for reductions in their assessments as they appeared on the Grand List of October 1, 1990. A revised appeal was filed on April 30, 1992. The plaintiffs allege that the assessed value of their condominium units was proportionately higher in relation to sales value than that of other similarly assessed residential property in Greenwich. The plaintiffs further allege that this assessment requires condominium owners to bear a CT Page 11289 disproportionate share of the tax burden in Greenwich, and as such is a violation of equal protection under the Fourteenth Amendment of the United States Constitution and Article First, § 20 of the Constitution of the State of Connecticut.
The affidavits presented by the defendants demonstrate that the municipality last conducted a revaluation for purposes of assessment in 1979. General Statutes § 12-62 requires the revaluation of real estate every ten years. Greenwich, however, received several extensions until October 1, 1993 from the Connecticut Legislature to conduct a revaluation. See Conn. Pub. Acts No. 89-251, § 190 (1989); No. 91-296, § 1 (1991); No. 92-197, § 1 (1992). The assessments challenged in this appeal are based on the revaluation last conducted, dated October 1, 1979.
The defendant has now filed a motion (#135) for summary judgment, including affidavits and documentary evidence. The plaintiffs filed an affidavit by the attorney for the plaintiff and documentary exhibits in opposition to the motion for summary judgment.
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105, 639 A.2d 507 (1994). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haeschev. Kissner, 229 Conn. 213, 217, 640 A.2d 89 (1994). "`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.'" Id.
The defendant argues that inequality that arises in the ratio of assessed value to market value during the interim between revaluations does not give rise to a cause of action for inequality of assessment. The plaintiffs maintain that changes in market value have caused condominium owners to bear a disproportionate share of the tax burden in comparison to other residential property owners, thus violating equal protection, and such changes require the Greenwich Assessor to modify their assessments to equalize the tax burden.
The plaintiffs have brought their appeal under General Statutes CT Page 11290 § 12-117a, formerly numbered § 12-118, which allows those aggrieved by an action of a Board of Tax Review to appeal to the Superior Court. The Connecticut Supreme Court, however, has held that to obtain relief under § 12-118 the plaintiff must prove that there was a violation of General Statutes § 12-64. Ralston Purina Co. v. Boardof Tax Review, 203 Conn. 425, 434, 525 A.2d 91 (1987). General Statutes § 12-64 provides that all nonexempt property "shall be set in the list of the town where it is situated and . . . shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred percent of such valuation, to be determined by the assessors. . . ." "In order properly to carry out the mandate of § 12-64 in its present form, three steps are required. (a) The fair value of property as of the assessment date must be determined. (b) A percent, not exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town. (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date." Lerner Shops of Connecticut, Inc.v. Waterbury, 151 Conn. 79, 85, 193 A.2d 472 (1963).
The plaintiffs argue that Lerner as well as Chamber of Commerceof Greater Waterbury v. Waterbury, 184 Conn. 333, 439 A.2d 1047 (1981), provide for judicial intervention when a taxpayer bears a disproportionate share of the taxes assessed. The plaintiffs contend that they have demonstrated this disproportion by showing that the ratio of assessed value to present market value is greater than that of other residential real estate in a similar price range.
The Connecticut Supreme Court has recognized the usefulness of average ratio analysis in determining unfairness in assessment practices, but the court has limited the use of the ratio as a remedy to cases where an assessor did not follow the requirements of General Statutes § 12-64. Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619,624, 438 A.2d 792 (1981); see also Newbury Commons Limited Partnershipv. Stamford, 226 Conn. 92, 626 A.2d 1292 (1993). "[U]se of the average ratio approach is not a supplement to fair valuation as mandated by the statute; it is appropriate only as an evidentiary tool useful in establishing that the statutory requirements have not been followed and as a remedy for such failure." Uniroyal, Inc. v. Board of TaxReview, supra, 626. "In Connecticut, the remedy for variations in the effect of market conditions on different parcels is set forth in General Statutes § 12-62." Id., 629. The Connecticut Supreme Court has held that "the decennial revaluation of real property mandated by § 12-62 is the exclusive remedy provided by the legislature `for variations in the CT Page 11291 effect of market conditions on different parcels. . . .'" Ralston PurinaCo. v. Board of Tax Review, supra, 203 Conn. 437. "Indeed, the procedure established in § 12-62 reflects the legislative judgment that the remedy of revaluation need only be available once each decade,' rather than any time property values fluctuate in response to market conditions."Id., 437-38. "By way of contrast, § 12-64 `is concerned with the manner of taxation, not the frequency of valuation, and it does not purport to require assessors to be updated on their valuations at all times. . . . [A]s a practical matter, assessors cannot be expected to revalue every year, even though changes which affect property values may occur within a given year.'" Uniroyal, Inc. v. Board of Tax Review, supra, 629-30.
Lerner and Waterbury only allow for judicial intervention when revaluation results in certain taxpayers bearing a disproportionate share of the tax burden since such a revaluation would be in violation of General Statutes § 12-64. Therefore, the assessments in question need only to have accurately reflected the value of the property in 1979, so as to comply with General Statutes § 12-64, a fact which the plaintiffs do not contest.
The plaintiff also argues that the ruling in 84 Century LimitedPartnership v. Board of Tax Review, 207 Conn. 250, 541 A.2d 478 (1988), which interprets General Statutes § 12-55, requires that the Greenwich Assessor adjust the market value of property during the interim between revaluations. General Statutes § 12-55 provides in part that "[t]he assessor or board of assessors may increase or decrease the valuation of property named in any of such lists or in the last-preceding grand list. . . ." General Statutes § 12-55. The court in 84 Century Limited
held that "[t]here is no ambiguity in this broad grant of powers to assessors. It is a clear legislative mandate to grant to local assessors a continuing duty unrelated to decennial revaluations, to achieve administratively a fair and equal assessment for all taxpayers. The power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low. The `if necessary' language clearly comprehends interim changes in assessments for there is no such requirement in § 12-62
which mandates decennial revaluations." Id., 262. Nevertheless, the court in 84 Century Limited concluded that "an assessor, absent unusual circumstances . . . cannot be required to make such an interim revaluation of real property, [although] he may do so in accordance with § 12-55, under appropriate circumstances." Id., 251.
The plaintiffs contend that the changes in market value which have caused them to bear a disproportionate share of the tax burden are one of those "unusual circumstances" that require an assessor CT Page 11292 to revalue property. In Ralston, the court considered "the destruction or expansion of property, a substantial change in its use or zoning classification, or a decision by the taxpayer to go out of business . . ." as some of these circumstances. Ralston Purina Co. v. Board of TaxReview, supra, 203 Conn. 435-36. The plaintiffs maintain that the changes in market value which have caused the disproportion should also be considered as one of these circumstances. In Uniroyal, however, in which the plaintiffs also argued that their assessment was disproportionate, the court held that average ratios cannot be used to remedy discrepancies which arise as a result of assessments which are carried through the decade. Uniroyal, Inc. v. Board of Review, supra, 182 Conn. 630. Moreover, in The Meadows of Enfield Association,Inc. v. Board of Tax Review, 9 Conn. L. Rptr. 522 (August 4, 1993, Walsh, J.), in which condominium owners challenged their assessments on the same basis as the present case, the court stated that "[t]he only reason for the change in the ratio has been the change in the market, and the legislature and the Court has (sic.) made clear that the only remedy for this is town wide revaluation every ten years."Id., 524.
While General Statutes § 12-55 gives a municipal assessor the authority to modify an assessment, the statute does not require it, except under "unusual circumstances." Furthermore, interpreting § 12-55
to include fluctuations in market value as one of these circumstances would vitiate the rulings of the Supreme Court noted previously which have consistently denied assessment modifications based on market changes.
The plaintiffs also argue that the Assessor's refusal to modify their assessments in light of the average ratios demonstrating that condominium owners have borne a disproportionate share of the property taxes is a violation of equal protection.
The Connecticut Supreme Court has stated that "[w]here legislation . . . which neither contains a suspect classification nor impinges on a fundamental right is challenged on equal protection grounds, we have stated that the plaintiff to prevail must establish that the statutory classification is without rational basis. . . . The classifications must be reasonable and rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." (Citations omitted; internal quotation marks omitted.) United Illuminating Co. v. New Haven, 179 Conn. 627, 636,427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S.Ct. 45,66 L.Ed.2d 5 (1980). "The United States Supreme Court has applied the `rational basis' test to legislation involving taxation." Id., 637. "That the CT Page 11293 states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others . . . these are among the commonplaces of taxation and of constitutional law. . . . Further, a state in exercising its taxing authority is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use, or value. . . . As long as some conceivable rational basis for the difference exists, a classification is not offensive merely because it is not made with mathematical nicety." (Citations omitted; emphasis in original; internal quotation marks omitted.)Id., 640.
The Connecticut Supreme Court determined the basis for decennial assessments of market values as follows. "The legislature is vested with broad powers of taxation and may prescribe the conditions and methods of assessment, levy and collection of taxes. . . . [T]he legislature properly exercised that power in enacting § 12-62, which is based upon the legislature's awareness that, even though property values may fluctuate within a ten year period, it is neither realistic nor necessarily desirable to require more frequent property revaluations. . . . The legislature thus deliberately fashioned an assessment scheme designed to require assessors to base property valuations upon more reliable, long term market trends: `Tax assessors are required to recognize and act on the principle that the true value of a fixed asset such as real estate is fairly constant and must be gauged, not by conditions temporary and extraordinary, but by those prevailing over a period of time, and the assessors, in listing values of property for taxation, may, to a certain extent, disregard excesses of a boom as well as the despair of a depression.'" (Citations omitted.)Ralston Purina Co. v. Board of Tax Review, supra, 203 Conn. 438-39.
The plaintiffs also contend that General Statutes § 12-62 requires that revaluations be conducted once each decade and that in this case it has been fourteen years between revaluations, which rises to the level of a special circumstance to be remedied under § 12-55. However, the extensions given to the Town of Greenwich were enacted by the Connecticut Legislature which also enacted § 12-62, and as such do not exceed the powers of the Legislature in regard to taxation as expressed in Ralston. Moreover, evidence and affidavits have been provided which demonstrate that the extensions were necessary to provide the Town of Greenwich with the opportunity to ensure that the current revaluation accurately reflects the value of the property to be assessed.
For the foregoing reasons, evidence indicating that disproportions have arisen in the wake of changing market values does not necessitate CT Page 11294 a conclusion that the assessment violates equal protection. Furthermore, as discussed above, the Supreme Court has consistently denied the remedy which the plaintiffs now seek, an interim revaluation in response to changes in market value. Accordingly, the defendant's motion for summary judgment is granted.
So Ordered.
Dated at Stamford, Connecticut, this 7 day of November, 1994.
WILLIAM BURKE LEWIS, JUDGE