[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
This court issued a memorandum of decision dated August 6, 1996,[1] denying the appeal of the plaintiffs, Cove, Inc. and a number of individuals, all owners of various units in a fifty-unit condominium known as Charles Cove on Charles Creek in Norwalk, seeking a reduction of their real estate taxes. The court had indicated in that first decision that the plaintiffs were attempting to reduce their assessments for the interim years after the 1983 revaluation list, which attempt was denied on the authority of Pauker v. Roig, 232 Conn. 335, 342-43, 654 A.2d 1233
(1995). The plaintiffs thereafter moved to reargue, and the original decision was vacated because the units belonging to the various plaintiffs had not yet been constructed in 1983, but rather were built later in the 1980s, and hence the plaintiffs were not appealing their interim assessments.
The complaint, which is in forty counts, one for each of the plaintiffs, alleges that the plaintiffs owned their units on October 1, 1989, that they appeared before the defendant board of tax review of the city of Norwalk[2] in March, 1991, and that they were appealing "the assessments of 1990, 1991, 1992, and 1993." In a supplement to their briefs, the plaintiffs stated that "they do not claim that the assessor was required to adjust CT Page 822 the market value between decennial revaluations," which was the main issue addressed in the original decision.[3] In that same supplement, the plaintiffs indicate that the values of their condominium units "were unequal from the initial 1983 revaluation." (Emphasis in original.) At oral argument, the plaintiffs indicated they were "paying 15% more because of the lack of equalization, we're paying more taxes than like property." A witness for the plaintiffs testified that the assessments of the various individual units were proper and accurate, but that in comparison to residential real estate, the assessments of the subject units lacked "equalization. That was the whole key."
The defendant board agrees that the plaintiffs have the right based on General Statutes § 12-112 to contest the value of their units each assessment year as that assessment is established annually. The board's counsel described the plaintiffs' claim as an attempt "to prove . . . that the assessed values that the City put on these units in 1983 was out of equalization with all other residential units in the City of Norwalk." According to the defendant board, the plaintiffs claim "that the sales to assessment ratio of condominiums compared to single family homes in the entire City was incorrect in 1983 and was thereby incorrect when each condominium was valued as it was completed during the 1980s, based on the 1983 values the City placed on them." Thus, the plaintiffs are appealing the 1990 assessment, as well as subsequent years, but contend that their appeals relate back to the 1983 decennial revaluation, which they claim was incorrectly calculated by the Norwalk assessor based on a disparity in the sales to assessment ratio of condominiums as contrasted to other residential properties.
The plaintiffs introduced the testimony of an expert witness who testified that he compared approximately forty sales of condominium units with a like number of sales of non-condominium residences and that the ratio between valuation and sales for the latter was 54% and that the plaintiffs were "over-taxed because of a lack of equalization" by approximately 15%. The defendant board presented the testimony of the municipal assessor who stated that there was no disparity between the ratio of the assessed valuation of real property and the fair market value of such property based on actual sales for condominiums and non-condominiums. Hence, according to the assessor, the plaintiffs had not borne a disproportionate share of real estate taxes in Norwalk. The assessor used the "equalized net grand CT Page 823 list" calculated by the state Office of Policy and Management[4] and his own analysis of a large number of sales in the area of the subject units, and he determined that the ratios for each type of property were substantially similar.
The plaintiffs rely on General Statutes § 12-64 (a) which provides that real property shall be taxed at a "uniform percentage" of its actual valuation. The plaintiffs contend that, based on the testimony of their expert witness, the assessor overtaxed condominiums in 1983 by approximately 15% as compared to other types of residential property. According to the plaintiffs, this error was carried forward each year and affected the first and subsequent assessments established for their units after they were constructed. As the city's assessor stated: "Uniformity is in fact the whole purpose of the assessment function." The plaintiffs also argue that in 1990 four of the current plaintiffs each obtained a 10% reduction in their assessment, and that, although such reductions were subsequently rescinded, they constitute an "admission by conduct" that all the subject units were erroneously assessed.
The subject of uniformity was addressed by the Connecticut Supreme Court in Ralston Purina Co. v. Board of Tax Review,203 Conn. 425, 434, 525 A.2d 91 (1987). In order to obtain relief by way of an appeal from a board of tax review, the plaintiff must prove that there was a violation of General Statutes § 12-64. Id. General Statutes § 12-64 provides that all nonexempt property "shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors. . . ."
The Supreme Court also held that "[i]n order properly to carry out the mandate of § 12-64 in its present form, three steps are required. (a) The fair value of property as of the assessment date must be determined. (b) A percent, not exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town. (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date." LernerShops of Connecticut, Inc. v. Waterbury, 151 Conn. 79, 85,193 A.2d 472 (1963). The plaintiffs contend that Lerner provides for judicial intervention when a taxpayer bears a disproportionate CT Page 824 share of the taxes assessed. Id., 86. The plaintiffs claim that they have demonstrated this disproportionate tax burden by showing that the ratio of assessed value of condominiums to market value was 65% as of 1983, as contrasted to 54% for other residential real estate.
The Supreme Court has recognized the usefulness of average ratio analysis in determining unfairness in assessment practices, but the court has limited the use of the ratio as a remedy to cases where "the evidence clearly establishes that the assessor failed to follow the requirements of General Statutes §12-64." Uniroyal. Inc. v. Board of Tax Review, 182 Conn. 619,624, 438 A.2d 782 (1981); see also Newbury Commons LimitedPartnership v. Stamford, 226 Conn. 92, 100, 626 A.2d 1292
(1993). "[U]se of the average ratio approach is not a supplement to fair valuation as mandated by the statute; it is appropriate only as an evidentiary tool useful in establishing that the statutory requirements have not been followed and as a remedy for such failure." Uniroyal. Inc. v.Board of Tax Review, supra, 626.
The court finds the testimony of the municipal assessor to be most persuasive because he utilized the ratio of sales and assessments for residential property in general as furnished by the state Office of Policy and Management to establish that such ratio was substantially similar to the same ratio for condominiums. It was difficult to discern the basis for the comparisons between condominium sales and the 37 sales seemingly randomly selected by the witness for the plaintiff in arriving at a variation of 15%. Employing the state's figures, as did the assessor, which includes city-wide sales, appears to produce a more accurate analysis. However, even the assessor did agree that as of 1983 the subject condominiums were being assessed at 67% of their market value, whereas residences in general were assessed in 1983 at 64%, a disparity which calculates mathematically to 5% because the assessor first subtracted $6,000 before determining market value for the subject condominiums. Therefore, the plaintiffs' appeal is sustained and judgment enters that their assessments for the tax years involved should be reduced by 5% for each year. The plaintiffs are entitled to a tax credit for overpayment, if any, of taxes on previous assessments.[5]
So Ordered.
Dated at Stamford, Connecticut, this 14th day of February, 1997. CT Page 825
William B. Lewis, Judge