THE STOP AND SHOP COMPANIES, INC.
*v.* TOWN OF EAST HAVEN
(13405)

THE STOP AND SHOP COMPANIES, INC.
*v.* CITY OF NEW HAVEN
(13428)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 7, 1988—decision released February 28, 1989

*Richard Wulsin,* pro hac vice, with whom were *Thomas A. Rouse* and, on the brief, *Christopher M. Reeves,* for the appellant in both cases (plaintiff).

*Michael J. McClary,* with whom, on the brief, was *Hugh F. Keefe,* for the appellee in the first case (defendant town of East Haven).

*Martin S. Echter,* deputy corporation counsel, for the appellee in the second case (defendant city of New Haven).

HULL, J. This appeal involves two cases, *Stop & Shop Cos.* v. *East Haven,* Docket No. 13405, and *Stop & Shop Cos.* v. *New Haven,* Docket No. 13428, that arrived in this court by different routes, but which involve the same issue on appeal. The procedural and factual background of each case is as follows.

In *Stop & Shop Cos.* v. *East Haven,* 13 Conn. App. 393, 536 A.2d 991 (1988), the plaintiff owned real and personal property in the town of East Haven on October 1, 1985. On that date, East Haven assessed the plaintiff's real property at the rate of 70 percent of its true and actual value as of October 1, 1981, the date of the town's last decennial revaluation. The assessors, however, assessed the plaintiff's personal property at 70 percent of its true and actual value as of October 1,

1985. Id., 394. The plaintiff appealed to the Superior Court from a decision of the board of tax review of the town of East Haven refusing to reduce the assessment of its personal property on the list of October 1, 1985. In its memorandum of decision dated July 18, 1986, the trial court, *Hon. Harold M. Mulvey, J.,* state trial referee, dismissed the appeal. The plaintiff appealed from that dismissal to the Appellate Court, claiming that the trial court erred in holding that the defendant properly assessed the plaintiff's personal property pursuant to General Statutes § 21-71 (b). The Appellate Court found no error. Id., 400. We granted the plaintiff's petition for certification to appeal from the Appellate Court, limited to the following issue: "Does General Statutes § 12-71 (b) permit a town to assess personal property on the basis of annual valuation when real property is assessed on the basis of a decennial revaluation?"

The second case, *Stop & Shop Cos.* v. *New Haven,* concerns the plaintiff's personal property assessment on the grand list of October 1, 1986. The assessors valued real estate in New Haven at 70 percent of its fair market value as of October 1, 1978, the last decennial revaluation in New Haven.[1] Personal property in New Haven was assessed at 70 percent of its fair market value as of October 1, 1986. The plaintiff, on appeal to the Superior Court from its personal property assessment, refined somewhat the claims it had made in the earlier *East Haven* case. It contended that the personal property assessment of October 1, 1986, should be

---

[1] There is no significance to the fact that the court in *Stop & Shop Cos.* v. *New Haven* referred to "fair market value" of personal property, while in *Stop & Shop Cos.* v. *East Haven* the court referred to its "true and actual valuation." These terms are interchangeable. "The terms actual valuation, market value, actual value, fair market value, market price and fair value are synonymous in the valuation of property for assessment purposes." *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 623 n.3, 438 A.2d 782 (1981).

reduced to the same percentage of its then actual valuation as existed with respect to the listing of real estate for the same year. In the Superior Court, the plaintiff raised for the first time a claim concerning the average ratio of assessed value on real estate in New Haven. It asserted that personal property was bearing a disproportionately higher tax burden on the list of October 1, 1986, because of the assessor's failure to comply with General Statutes §§ 12-62a (b) and 12-71 (b), in that the assessment of personal property was a higher percentage of its then actual valuation than existed with respect to real estate for the same year. On December 3, 1987, the trial court, *Hon. Harold M. Mulvey, J.*, state trial referee, filed a memorandum of decision identical to that filed in the *East Haven* case, and dismissed the plaintiff's appeal. In its decision, the trial court did not consider or rule upon the plaintiff's claim of disproportionate tax burden. Thereafter, the plaintiff appealed the dismissal to the Appellate Court, and the case was then transferred to this court after certification was granted in the *East Haven* case. The issue framed by the plaintiff on appeal to the Appellate Court raises the same issue as that certified in the *East Haven* case.[2] For simplicity of procedure, therefore, we will consider the previously noted certified question to be the issue in both cases.

General Statutes § 12-62, titled "Periodic revaluation of real estate," provides: "(a) Commencing October 1, 1978, the assessors of all towns . . . shall, no later than ten years following the last preceding revaluation of all real property and every ten years after each such revaluation, view all of the real estate of their respec-

---

[2] In its appeal to the Appellate Court, the plaintiff presented the following issue in its preliminary statement of issues: "Whether the trial court erred in dismissing the instant appeal, and in so doing, holding that the City of New Haven properly assessed the appellant's property pursuant to Connecticut General Statutes § 12-71 (b)."

tive municipalities, and shall revalue the same for assessment . . . . " The parties agree that if real estate was properly assessed on the first grand list following a revaluation, then variation in the effect of market conditions on different parcels need not be reflected in subsequent assessments between revaluations. See *84 Century Limited Partnership* v. *Board of Tax Review,* 207 Conn. 250, 256, 541 A.2d 478 (1988); *Ralston Purina Co. v. Board of Tax Review,* 203 Conn. 425, 437–38, 525 A.2d 91 (1987); *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 629, 438 A.2d 782 (1981). General Statutes § 12-62a (b) provides that "[e]ach . . . municipality shall, no later than the close of its next revaluation required under the provisions of section 12-62, assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value, as determined under section 12-63." General Statutes § 12-63 provides that the present true and actual value of property shall be deemed by all assessors and boards of tax review to be the fair market value thereof. General Statutes § 12-64 (a) provides that taxable real estate "except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation . . . . " Finally, General Statutes § 12-71 (b), on which the plaintiff principally relies, provides that "[all personal property liable to taxation] shall be valued at the same percentage of its then actual valuation as the assessors have determined with respect to the listing of real estate for the same year . . . . " In contrast to real property, personal property is assessed annually. General Statutes § 12-40.

The plaintiff stresses that it does not attack the manner in which the assessors in East Haven and New Haven assessed real estate in the pertinent years. In its brief it quotes with approval the statement in *Stop & Shop Cos.* v. *East Haven,* supra, 394, that "[t]he plain-

tiff does not contest the legitimacy of the decennial revaluation of real property authorized by General Statutes § 12-62, nor the method by which real property is valued. General Statutes § 12-64.''

Instead, ''[t]he plaintiff contends that the language of General Statutes § 12-71 (b) and its legislative history require that towns value real and personal property on the same date so that the two are taxed at the same effective rate, not merely at the same percentage of their assessed value.'' Id., 394–95. To put it another way, the plaintiff claims that the statute requires the assessment of real and personal property at the same ratio of true value. In support of its position, the plaintiff relies on our oft-cited statement that, in construing a statute, courts may consider its plain language, its legislative history, its purpose and the circumstances surrounding its enactment. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Dukes* v. *Durante,* 192 Conn. 207, 214–15, 471 A.2d 1368 (1984).

The plaintiff's claim is not plainly supported by the language of § 12-71 (b), which states that personal property ''shall be valued at its same percentage of its then actual valuation as the assessors have determined with respect to the listing of real estate for the same year . . . .'' Clearly, the tax assessors did apply the same nominal percentage rate to the ''actual valuation'' of the plaintiff's personal property as they applied to real estate. The plaintiff's claim, however, is that this nominal equivalency masks an underlying disparity arising out of differences in the time of ''actual valuation.'' In order to determine whether the statute is latently ambiguous in this manner, and should be construed as the plaintiff contends, we must turn to the pertinent legislative history and our clear-cut decisions concerning decennial revaluations.

The plaintiff's argument concerning legislative history relies primarily on No. 673 of the 1957 Public Acts, now codified in § 12-71, which became effective on June 21, 1957, approximately one month after our decision in *E. Ingraham Co.* v. *Bristol,* 144 Conn. 374, 132 A.2d 563 (1957). In that case, the plaintiff, a manufacturing concern, owned real estate and personalty in Bristol. The assessors, on the October 1, 1954 grand list, listed the plaintiff's real estate at 50 percent, and its personalty at 90 percent, of the actual values previously determined for those categories of the plaintiff's property. Id., 376. The plaintiff appealed to the board of tax review for a reduction in the assessment of its personalty, but the appeal was dismissed. On the plaintiff's subsequent statutory appeal to the Court of Common Pleas, four questions were reserved to this court for advice. We construed these questions as presenting "the single issue whether or not the assessors can, by using a higher percentage of the actual value of personalty than they do of real estate in making assessments, impose upon the plaintiff the obligation of paying a greater proportionate amount of taxes than those assessed, let us say, for only real estate." Id., 376–77. We concluded that while the assessing of property at a fraction of its actual value had been tolerated for so long a time that "it has acquired the respectability of assumed legality," such a practice was clearly improper. Id., 377. The pertinent statutes gave assessors "no warrant to utilize as a tax base any value other than the actual value of the property." Id., 378. We found the fractional valuation used by the Bristol assessors in listing the plaintiff's real estate at 50 percent of its actual value and its personalty at 90 percent of that value, to be illegal. Id., 380. We concluded, however, that we could not, without violating the applicable statutes, order a reduction of the assessment of the

plaintiff's personalty, because such an adjustment would result in this court's fixing a value below that prescribed by the statutes. Id., 382–83.

The plaintiff's claim that the legislative history of No. 673 of the 1957 Public Acts supports its position begs the question. That history does not concern in any way the issue in this case as to the same effective tax rate for real estate and personalty. It merely concerns uniformity of fractional valuations for real estate and personalty. Such uniformity is not questioned in this case since all parties agree that the assessors in each case applied the statutorily mandated factor of 70 percent to the valuations on which they relied.

The main thrust of the plaintiff's argument is that upon a proper showing on the date of assessment of its personalty, of an average ratio of assessed fair market value of real estate to its assessed value which ratio is lower than 70 percent, the plaintiff is entitled to have its personalty assessed at such lower ratio. With due regard for the plaintiff's status as an operator of supermarkets, we note that it is mixing apples and oranges in its attempt to establish a linkage between the sales assessment ratio of realty and that of personalty. For, no matter how stylishly the package may be wrapped, this argument is clearly no more than another way to produce a reading of § 12-71 (b) that, when properly read in the light of our case law, flies in the face of the statutory language.

Contrary to the plaintiff's argument, its proffered construction of § 12-71 (b) is not supported by *Kays, Inc.* v. *Board of Tax Review*, 170 Conn. 477, 365 A.2d 1207 (1976). In that case, the plaintiff sought a reduction in the assessment of its real property on the ground that it was disproportionately high because the majority of assessments, which were based upon 60 percent of 1969 values, were substantially less than 60 percent

of present value, while its property was assessed at 60 percent of present value. We stated that relief would have been available "[i]f the plaintiff had produced evidence that 'an average, as distinguished from a uniform,' ratio of the assessed value of properties to their present market values fell below 60 percent, and 'if that evidence was credited by the trial court and found by it to be adequate to prove a fair approximation of the average ratio or percent of the fair value actually obtaining in the taxing district, an individual assessment could properly be reduced to the percentage computed from that ratio.' " Id., 481, quoting *Lerner Shops of Connecticut, Inc.* v. *Waterbury*, 151 Conn. 79, 88, 193 A.2d 472 (1963). We found no error in the trial court's conclusion that the evidence presented was insufficient to establish an average ratio. *Kays, Inc.* v. *Board of Tax Review,* supra, 482.

Our holding in *Kays, Inc.,* was subsequently clarified in another case discussing the limitations on the use of the average ratio technique in challenging tax assessments. In *Uniroyal, Inc.* v. *Board of Tax Review,* supra, we pointed out that "[i]n Connecticut, the procedure for taxation of real property is set forth in General Statutes § 12-64, which provides that all non-exempt real estate 'shall be liable to taxation at a uniform percentage of its present, true and actual valuation to be determined by the assessors . . . .' The three steps necessary to carry out the mandate of § 12-64 are: '(a) The fair value of property as of the assessment date must be determined. (b) A percent, not exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town. (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date.' " Id., 623, quoting *Lerner*

*Shops of Connecticut, Inc.* v. *Waterbury,* supra, 85. We concluded that "[t]he decisions of this court indicate that use of the average ratio approach is not a supplement to fair valuation as mandated by the statute; it is appropriate only as an evidentiary tool useful in establishing that the statutory requirements have not been followed and as a remedy for such failure." *Uniroyal, Inc.* v. *Board of Tax Review,* supra, 626. We further stated that "[i]n Connecticut, the remedy for variations in the effect of market conditions on different parcels is set forth in General Statutes § 12-62. The remedy of revaluation was established by the legislature and it was the judgment of the legislature that the remedy need only be available once each decade. See *Bassett* v. *Rose,* [141 Conn. 129, 135, 104 A.2d 212 (1954)]. By way of contrast, § 12-64 'is concerned with the manner of taxation, not the frequency of valuation, and it does not purport to require assessors to be updated on their valuations at all times. . . . [A]s a practical matter, assessors cannot be expected to revalue every year, even though changes which affect property values may occur within a given year.' *Kays, Inc.* v. *Board of Tax Review,* supra, 480.

"Because the remedy for changing market values is set forth in General Statutes § 12-62, we conclude that use of the average ratio approach is not applicable to discrepancies in valuation which arise during the ten-year period between valuations. See *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 678–79, 154 A.2d 608 (1959)." *Uniroyal, Inc.* v. *Board of Tax Review,* supra, 629–30.

In each of the cases before us, the plaintiff specifically did not challenge the last decennial revaluation of its real estate. Thus, even if the plaintiff had sought to challenge its present real estate valuation, this approach would be denied to it by our ruling in *Uniroyal, Inc.,* cited above. Despite being blocked at

the front door, the plaintiff attempts to use a side door by challenging the valuation of personalty on the basis of the average ratio technique concerning real estate valuation. The plaintiff, however, offers no authority for this attempted hybrid use of the average ratio technique. It did not claim disproportionality of its personalty compared to other owners of personal property. This claim is without merit.

Concerning the core issue in these cases, we cannot improve upon either the language or reasoning of the Appellate Court in *Stop & Shop Cos.* v. *East Haven,* supra, 399: "There is nothing in either the language of General Statutes § 12-71 (b) or its legislative history which calls into question the practice of revaluing real property every ten years but valuing personal property annually. This conclusion is consistent with the legislature's decision to give tax assessors the authority to increase or decrease the 'valuation of property' which appears on the town's annual grand lists. [See] General Statutes § 12-55." The Appellate Court concluded: "[T]his language provides for a permissive valuation of property in the years between the decennial revaluations, without requiring it. . . . There is nothing in this language which requires that the assessors carry out interim revaluation of all classes of property if they revalue one class of property.

"Rather, § 12-55 allows towns to engage in voluntary tax relief when property has decreased in value. . . . If we were to conclude, as the plaintiff argues, that real property and personal property must be valued on the same date, we would vitiate the express language of § 12-55 because we would then be requiring that assessors treat real property and personal property in an identical fashion during the years between the decennial revaluation. We note that the nature of personal property lends itself to an annual valuation, often completely losing its useful value in

a ten year period. Real property, by contrast, is durable and nearly always appreciates in value. . . . Furthermore, personalty is generally assessed annually at a lower value than each preceding year because it depreciates. . . . Thus, owners of personalty receive the benefit of a declining value each year for the purposes of taxation." (Citations omitted.) Id., 399–400. We agree.

In *Stop & Shop Cos.* v. *East Haven,* Docket No. 13405, the judgment of the Appellate Court is affirmed; in *Stop & Shop Cos.* v. *New Haven,* Docket No. 13428, there is no error.

In this opinion the other justices concurred.