[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Joel Saphir, appeals from a decision by the defendant, Board of Tax Review of the Town of Sherman, refusing to reduce the valuation of certain real property owned by the plaintiff. CT Page 10402
The plaintiff claims in his appeal that as the owner of the subject property he is aggrieved because:
a) the assessment of his property on the grand list of October, 1989 is not 70 percent of the fair market value as of that date, but is excessive, disproportionate and unlawful;
b) the defendant, Board of Tax Review, has failed to perform its duty to equalize the plaintiff's assessment in accordance with the dictates of section 12-111 of the Connecticut General Statutes, and as a result of which the plaintiff's property is assessed far in excess of other similarly situated properties in the Town of Sherman.
The plaintiff, Joel Saphir, is the owner of approximately 0.448 acres of land located at 8 Orchard Beach Road, Sherman, Connecticut. The lot's shape is unusual and unique as compared to other property in the Town of Sherman because the buildable portion of the lot is approximately 13,900 square feet in a trapezoidal shape, and the remaining portion of the lot, approximately 5,600 square feet, is a waterfront access strip which is 25 feet wide and 226 feet long. See Appendix A (Tax Map #64 of the Town of Sherman, lot 3 solely with regard to layout of the land). The property is improved with a single family dwelling consisting of 876 square feet of finished living space on the main level, which is comprised of a kitchen, dining area, living room, two bedrooms and a bathroom. Attached to the outside of the main level is a carport. In the basement, there is a recreation room, bathroom and utility area.
In 1989, the Town of Sherman employed Municipal Management Consultants (MMC), as permitted by General Statutes, Sec. 12-62(c), to perform the Town's decennial revaluation, as required by General Statutes, Sec. 12-62. As part of the revaluation process, MMC compiled a manual which sets forth the revaluation guidelines and standards. When MMC initially attempted to perform a physical revaluation inspection of the plaintiff's property, a representative of MMC was unable to obtain access to the inside of the Saphir dwelling, the plaintiff claiming that the person seeking access failed to properly identify himself. Nevertheless, although MMC did not view the inside of the Saphir dwelling, CT Page 10403 MMC and the town assessor valued the Saphir property at $179,530.00, with $111,100.00 allocated to the land and $68,430.00 allocated to the dwelling.
After being informed of this valuation, Saphir, at the pregrand list finalization level, objected to the valuation based upon the inclusion of a jacuzzi and a ceramic tile floor, two improvements which were not present in the Saphir dwelling. Although these improvements were removed from the assessment, resulting in a reduction of the total assessment to $153,270.00 ($88,880.00 allocated to the land and $64,390.00 allocated to the building), Saphir appealed to the Board of Tax Review claiming, among other things, that the carport was appraised at the $17.30 per square foot garage rate instead of the $8.64 per square foot carport rate. After a hearing, the Board upheld the assessor's appraisal of the property.
On May 30, 1990, Saphir timely appealed to this court pursuant to General Statutes, Sec. 12-118. The necessary aggrievement on the part of the plaintiff (the owner of the subject property) has been properly pleaded and is obvious on the face of the record. The appeal is thus properly before this court.
During the course of this appeal, the plaintiff amended his application to include the 1990 and 1991 tax years which carried over the 1989 tax assessment.
During the course of this appeal, the court suggested, and the parties agreed to, a physical inspection of the Saphir property and a view of the nearby dwellings. As a result of the inspections on March 26, 1992, the assessment of the Saphir dwelling was reduced as follows: (1) the valuation of the Saphir basement was reduced from $18.00 per square foot as living area to $6.75 per-square foot as a recreation room; (2) the valuation of the carport was reduced from $17.30 per square foot as a garage to $8.64 per square foot as a carport; (3) the valuation of the grade of the dwelling was reduced from BC to C, which resulted in a reduction of the grade multiplier from 1.21 to 1.00; and, (4) the valuation of the plumbing units was reduced from $4,480.00 (7 units) to $2,560.00 (4 units). The net result was a reduction in the assessment of the dwelling by $18,540.00 to $45,850.00. Despite these reductions, Saphir CT Page 10404 argues (1) that the land value should be reduced due to the unique shape and topographical condition of the Saphir lot; (2) that the square foot carport value should be equalized with that of other carports; (3) that the depreciation value applied to the carport should be equalized with that of other carports; and (4) that the dwelling value should be reduced to take into account functional obsolescence.
The plaintiff appeals to this court pursuant to General Statutes, Sec. 12-118, which provides in relevant part that any person claiming to be aggrieved by the action of the board of tax review may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the Superior Court. The court shall have the power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appears equitable. In the present case, the plaintiff claims to be aggrieved by the defendant because the defendant failed to equalize and adjust the assessment of his property pursuant to General Statutes, Sec. 12-111, which provides in relevant part that "[a]t such meeting any person . claiming to be aggrieved by the doings of the assessors . . . may appeal therefrom to such board of tax review. . . . Such board may equalize and adjust the valuations and assessment lists. . . ." "Only if the court finds that the property has been overvalued by the assessors, can it exercise its power to correct the valuation." (Citations omitted.) Midway Green Corporation v. Board of Tax Review, 8 Conn. App. 440,442, 512 A.2d 984 (1986). A taxpayer is
 `entitled to relief under Sec. 12-118 if . . . [he can] prove that . . . [his] property . . . [is] bearing a disproportionately high tax burden because of the . . . [board of tax review's] failure to comply with Sec. 12-64.' [Citations omitted.] As our cases indicate, relief under Sec. 12-118 is conditioned upon proof of failure to comply with Sec. 12-64.'
(Citation omitted.) 84 Century Limited Partnership v. Board of Tax Review, 207 Conn. 250, 261, 541 A.2d 478 (1988). "General Statutes, Sec. 12-64(a) provides that taxable real estate `except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation . . . .'" (Emphasis added.) Stop Shop CT Page 10405 Cos. v. East Haven, 210 Conn. 233, 237, 554 A.2d 1055 (1989).
 The three steps necessary to carry out the mandate of Sec. 12-64 are: `(a) The fair value of property as of the assessment date must be determined. (b) A percent, not exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town. (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date.'
(Citation omitted.) Stop Shop Cos. v. East Haven, supra, 241, quoting Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619,623, 438 A.2d 782 (1981).
The function of the court is to ascertain the true and actual value of plaintiff's property. O'Brien v. Board of Tax Review, 169 Conn. 129, 135. "`[I]n any assessment case, the trial court is confronted with conflicting accounting methods; giving credence to one over the other is a proper exercise of its function as a trier of fact." (Citations omitted.) Northeast Datacom, Inc. v. Wallingford, 212 Conn. 639,647, 563, A.2d 688 (1989).
 `[T]he process of estimating the value of property for taxation is, at best, one of approximation and judgment, and there is a margin for a difference of opinion.' Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 675, 154 A.2d 608 (1959). `There may be more ways than one of estimating the value of such . . . [property] for taxation.' Bridgeport Brass Co. v. Drew, 102 Conn. 206, 212, 128 A.2d 413 (1925).
 At least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence. Lomas Nettleton Co. v. Waterbury, 122 Conn. 228, 230, 188 A. 433
CT Page 10406 (1936); see also General Statutes, Sec. 12-63b. `Each of these is an approved method of ascertaining the actual value of real estate for purposes of taxation. We so held as to the method of reproduction costs in Underwood Typewriter Co. v. Hartford, [99 Conn. 329, 337, 122 A. 91
(1923)].'
(Citation omitted.) Second Stone Ridge Cooperative Corporation v. Bridgeport, 220 Conn. 335, 342, 597 A.2d 326
(1991).
In the present case, the MMC and the assessor utilized the reproduction cost approach, which is the reproduction or replacement of the building now, less estimated accrued depreciation, if any, plus estimated land value. Encyclopedia of Real Estate Appraising, (Friedman, Ed. 1968). The MMC and the assessor estimated that the value of the land is $88,880.00. The plaintiff initially argues that this valuation is excessive due to the unusual shape and topographical condition of the land. When valuing waterfront property, the MMC and the town assessor multiplied the unit price of the property by the site index of 2.5. The plaintiff alleges that the application of this site index number results in an overassessment of his property because, although the Saphir lot has a 25 foot access strip to the water, the Saphir property does not enjoy the normal waterfront amenities. For example, the Saphir waterfront area is 1.8 to 4 times smaller in width than nearby waterfront property owners, and the Saphir lot does not have the lake view seven months of the year due to the presence of tree obstruction and the presence of an additional lot between the major portion of the Saphir lot and the lake. In addition, the 25 foot access strip is a steep decline to the waterfront, which requires an 8 foot high sea wall that precludes the creation of a beach, and the 25 foot width of the strip, coupled with current zoning, precludes the erection of structures near the waterfront. As a result, the plaintiff argues that the property should be valued as an inland lot with a positive adjustment for the limited access strip.
To support the allegation that the property should be valued as an inland lot with a positive adjustment for the limited access strip, the plaintiff compares the figures from CT Page 10407 the 1979 decennial revaluation to those figures from the 1989 revaluation. "Evidence of disproportionate assessments of other properties . . . may be considered . . . in relation to the true and actual value of the plaintiff's property." (Citation omitted.) O'Brien v. Board of Tax Review, supra, 135. According to the plaintiff, the 1979 computations and valuations prove that the Saphir lot should not be valued as a waterfront property since the Saphir lot has not changed since 1979. The plaintiff submitted a small list of 1979 comparable property assessments, which includes an average inland lot assessment ("average") of nearby properties with approximately one-half acre of land (Ricciardi, Zsiba and Derby lots) and the Rosner lot (a waterfront lot totalling .5 acres). The 1979 assessment figures are as follows (with each figure being multiplied by the following number to arrive at the final assessment):
 Equalization Unit Value Base Condition Assessment Owner Price Factor Value Factor Factor — --- ----- ------ ----- --------- ------------
Average 30,000 100% 30,000 71% 70% 14,910 Saphir 60,000 60% 36,000 71% 70% 17,890 Rosner 60,000 80% 48,000 71% 70% 23,860
Based upon these figures, the plaintiff suggests that his lot should be valued at 20 percent more than inland lots ($17,890 divided by $14,910). On the other hand, by utilizing the plaintiff's logic, the Saphir lot should be valued at 34 percent less than waterfront lots ($23,860 divided by $17,890).
"The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed." (Citation omitted.) Gorin's, Inc. v. Board of Tax Review, 178 Conn. 606, 608, 424 A.2d 282 (1979).
 It is true that when a property owner challenges the assessor's valuation, `the plaintiffs' burden . . . is a difficult one. `[P]roper deference must be given to the judgment and experience of assessors.'" [Citation omitted.] `The law contemplates that a wide discretion is to CT Page 10408 be accorded to the assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of the value for taxation purposes.' [Citations omitted.] (Emphasis in original.) [Citation omitted.] While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut.
Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589,525 A.2d 1327 (1989). "The court must first determine whether the plaintiff has been aggrieved by the action of the board of tax review and, if so found, it then proceeds to exercise broad discretionary power to grant relief." (Citations omitted.) O'Brien v. Board of Tax Review, supra, 131. "The court is not limited to a review of whether an assessor's action has been unreasonable or discriminatory or has resulted in substantial overvaluation. Mere overvaluation is enough to justify redress under Sec. 12-118." (Citations omitted.) Hutensky v. Avon, 163 Conn. 433, 436, 311 A.2d 92
(1972).
Based upon the above, the court finds that the plaintiff has been aggrieved by the Board of Tax Review because his property has been overassessed. In 1979, the assessor applied an 80 percent value factor to the Rosner lot, which is a .5 acre waterfront lot, whereas the assessor applied a 60 percent value factor to the Saphir lot. However, in 1989, the assessor applied a 2.5 site index to both properties. Since the assessor utilized a site index factor instead of the value factor used in 1979, the court finds that the site index applied to the plaintiff's property should be reduced from 2.5 to 2.1 to take into account the lot's unusual shape, which decreases its value. The valuation of property for assessment purposes is generally regarded as a question of fact for the trier, provided no rule of law has been violated. Gorin's, Inc. v. Board of Tax Review, supra, 607. "[T]he trier is not limited to arbitrating the differing opinions of the expert witnesses but is to draw its conclusions in light of all the circumstances, the evidence, its general knowledge and its viewing of the premises. CT Page 10409 [Citations omitted.] The trier may accept or reject the testimony of an expert, offered by one party or the other, in whole or in part." Midway Green Corporation v. Board of Tax Review supra, 442-43. "`When confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value.'" (Citations omitted.) Eichman v. J J Building Co., 216 Conn. 443, 452,582 A.2d 182 (1990). Accordingly, if the 1989 site index is reduced, the computations and values of the Saphir lot, as compared to the Derby and Rosner lots, will be as follows: incorrectly depreciated at 22 percent, whereas other carports were depreciated at 50 percent. Again, the plaintiff merely sets forth the depreciation percentage applied to other carports without showing why that percentage should have been applied to the Saphir carport. According the Plaintiff's Exhibit 4, a structure in average condition that was built in 1954, as was the Saphir structure, should be depreciated at 22 percent. The court finds that the plaintiff has failed to sustain his burden to show that the carport was overassessed.
Finally, the plaintiff argues that the value of the dwelling should be decreased by 6 percent due to functional obsolescence. According to the plaintiff's testimony and post trial brief, the first floor windows do not open, the basement ceilings are 7 feet 3 inches as opposed to 8 feet standard, and the wood deck railings do not comply with current building code standards. These conditions somewhat reduce the value of the dwelling. The court finds that the value of the dwelling should be reduced by 1 percent. As a result, the value of the dwelling, previously valued at $65,500.00 before the 70 percent equalization, should be $64,845.00; and the assessed value, after the 70 percent equalization, should be $45,392.00.
Accordingly, the court reduces the assessment of the land from $88,880.00 to $74,660.00 and reduces the assessment of the dwelling from $45,850.00 to $45,392.00. The total reduction is $14,678. The new total assessment is $120,052.
Morton I. Riefberg, Judge CT Page 10410