[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
BACKGROUND
The Plaintiff is the Unit Owners' Association of the Meadows of Enfield, a condominium complex in Enfield, CT Page 6900 Connecticut, consisting of 60 townhouses, 24 split level units, and 36 ranch style units, a total of 120 living units. On March 18, 1991, the Plaintiff appealed to the Enfield Board of Tax Review for relief from excessive property tax assessment on the Town Grand List of October 1, 1990. The appeal was denied, so the Plaintiff has brought this action under Section 12-118 of the Connecticut General Statutes, requesting a revision of the assessments of October 1, 1990, 91 and 92.
In its Memorandum of Claims of Law dated March 17, 1993, the Plaintiff has made five claims of law.
"1. All residential real property in a municipality should be assessed for property taxes on a uniform basis and percent of fair market value, therefore, condominiums and residential houses should be similarly assessed."
"2. The Court may consider average ratio studies of assessed value to market value for residential houses and condominiums to determine that the assessed value of The Meadows was excessive, disproportionate or inequitable."
"3. Conn. Gen. Stat. 12-55 requires the tax assessment lists of a particular town to be equalized, if necessary, by increase or decrease in the valuation of property on such lists unrelated to decennial valuation. Where the defendant assessor and Board of Tax Review refuse to exercise such duty to equalize, the Court shall he empowered to exercise its discretion and grant such justice and equitable relief as the Court may determine pursuant to Conn. Gen. Stat. 12-118."
"4. Conn. Gen. Stat. 12-118 requires that any reduction to the assessed value of the applicant's property, as it appears on the grand list of Oct. 1, 1990, shall be the revised assessment value for subsequent assessment years and abatement of any excess tax shall be made accordingly."
"5. Specific increases in the mill rate by the Town of Enfield and the earmarking of the same for trash removal, a service which the applicant does not receive, constitutes a taking of property without due process of law in violation of Article First, 8, of the Connecticut Constitution, or 1 of theFourteenth Amendment of the United States Constitution."
The Defendant has asserted various claims of fact and law CT Page 6901 in its Trial Memorandum dated March 16, 1993, its Trial Memorandum dated May 31, 1993 and its Supplemental Statement of Law dated May 17, 1993. The Plaintiff submitted Plaintiff's Reply to Defendant's Trial Memorandum, dated June 7, 1993.
FACTUAL FINDINGS
The Meadows units were first carried on the grand list of October 1, 1984, having been built after Enfield's last decennial valuation, date of October 1, 1983. From 1984 to date the assessment has been $62,800.00 for the 60 Townhouses, and $64,600.00 for the 24 Split Levels and for the 36 Ranches. All the roads within the Meadows development are owned by the Association and not by the Town.
The term "sales assessment ratio" is an expression of the percentage figure arrived at by dividing the assessed value of a property by its current sales price e.g. if the assessment were $50,000.00 and the property had a fair market value of $100,000.00, then the ratio would be one-half, or 50%. The term "weighted mean" is the average sales assessment ratio within a particular category of property, such as all single family homes including condominiums, or just condominiums.
During the period of October 1, 1989 through September 30, 1990, the weighted mean for all single family homes (which includes condominiums) was 32.94%. During that same period, the weighted mean for the eight Meadow units sold was 44%.
For the October 1, 1990 to September 30, 1991 period, the weighted mean for all single family units was 34.55%, whereas for the six Meadows sales it was 43.23%.
Comparison of the weighted means of the Plaintiff, to other condominiums, and of the Plaintiff to commercial properties, from October 1, 1989 to September 30, 1991, show a difference, but a significantly smaller one than the difference between the Plaintiff and all single residences.
LEGAL ISSUES
The Plaintiff makes the following claims of law.
1. "All residential real property in a municipality should be assessed for property taxes on a uniform basis and percent of CT Page 6902 fair market value, therefore condominiums and residential houses should be similarly assessed."
This is required under Conn. Gen. Stat. 12-64, and is uncontested by the defendant.
2. "The Court may consider average ratio studies of assessed value to market value for residential houses and condominiums to determine that the assessed value of the Meadows was excessive, disproportionate or inequitable."
The Plaintiff has brought this action pursuant to Conn. Gen. Stat. 12-118, as an appeal from a decision of the Board of Tax Review in the Town of Enfield. The plaintiff is an aggrieved person, as required under 12-118, due to the fact that the Board of Tax Review decided the plaintiff's appeal adversely. Lerner Shops of Connecticut, Inc. v. Town of Waterbury, 151 Conn. 79 (1963). However, the Plaintiff has not necessarily been aggrieved to the point of being subject to illegal taxation by the Town of Enfield, as required under12-118 in order to obtain relief from the court:
 "The court performs a double function on an appeal from a board of tax review. First, it must determine the judicial question whether the appellant has been aggrieved by such action on the part of the board as will result in the payment of an unjust and, therefore, a practically illegal tax. Secondly, if that question is answered in the affirmative, the court must proceed to exercise its broad discretionary power to grant relief." Sibley v. Middlefield, 143 Conn. 100, 105 (1956) (emphasis added).
In order to determine if the Plaintiff has been so aggrieved as to be subject to unjust taxation, the Court tries the matter de novo, and the ultimate question is the ascertainment of the true and actual value of the taxpayer's property. O'Brien v. Board of Tax Review of the Town of Groton,169 Conn. 129 (1975). Determination of valuation of land for tax purposes is a question of fact for the trier of facts. Dickau v. Glastonbury, 156 Conn. 437 (1968). Proper deference must be given to judgment and experience of assessors, for the process of estimating value of property for taxation, is, at best, one of approximation and judgment, and there is margin for difference of opinion. Connecticut Coke Company v. New Haven, CT Page 6903169 Conn. 663 (1975). The initial valuation of the Meadows properties began in 1984 and continued as the units were sold. This valuation was based on the fair market value at the time of valuation as required by Conn. Gen. Stat. 12-63. The initial valuations placed on the Meadows properties were uncontested by the plaintiff, and were used for all assessment dates in question on this appeal, October 1, 1990; October 1, 1991; and October 1, 1992.
The Plaintiff claims that the Court may consider average ratio studies of assessed value to market value to determine any unjust taxation of the Meadows by the Town of Enfield. This is true, as the Court may consider all evidence which will aid the trier of fact to arrive at his own conclusion as to the fair market value of property for purposes of taxation. Connecticut Savings Bank of New Haven v. City of New Haven, 131 Conn. 575
(1945).
The Plaintiff cites Lerner Shops as the Connecticut Supreme Court case which allows average sales-assessment ratio evidence as the basis for providing relief to an unjustly taxed taxpayer. Plaintiff's Memorandum of Claims of Law, March 17, 1993, p. 5. Even if true, the Court must first determine if the taxpayer will be unjustly taxed before considering the manner in which relief will be provided.
The Plaintiff cites Kay's, Inc. v. Board of Tax Review, City of New Haven, 170 Conn. 477 (1976), and Uniroyal, Inc., et al v. Board of Tax Review of the Town of Middlebury, 182 Conn. 619
(1981), as evidence that "the Court may consider average ratios of assessed value as evidence to determine whether the assessed value of property is excessive, disproportionate or inequitable." Plaintiff's Memorandum of Claims of Law, March 17, 1993, p. 7. However, these cases are not so simply defined, as the Plaintiff would have the Court think. The suggestion in the Kay's decision was that average ratio evidence could be used to properly reduce an individual assessment to a percentage computed from that ratio, "if that evidence was credited by the trial court and found by it to be adequate to prove a fair approximation of the average ratio or percent of the fair value actually obtaining in the taxing district[.]" Kay's,170 Conn. at 481. (emphasis added). And, in fact, in that particular case it was not so found.
In Uniroyal, the Court attempted to explain the confusion CT Page 6904 surrounding Kay's when it stated, "[a]lthough our previous opinions have recognized the usefulness of average ratio analysis to establish the unfairness of assessment practices, we have carefully limited use of the ratio as a remedy to cases where the evidence clearly establishes that the assessor failed to follow the requirements of General Statutes 12-64." Uniroyal, 192 Conn. at 624. (emphasis in original).
 "In order properly to carry out the mandate of 12-64
in its present form, three steps are required. (a) The fair value of property as of the assessment date must be determined. (b) A percent, not exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town. (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date." Lerner Shops, 151 Conn. at 85.
The fair market value on the assessment dates in question would be the valuation placed on those properties according to Conn. Gen. Stats. 12-62 and 12-63 which require periodic revaluation of real property every ten years and valuation of property according to its fair market value. See, Uniroyal,182 Conn. at 629; Ralston Purina Co. v. Board of Tax Review of the Town of Franklin, 203 Conn. 425, 438 (1987); and Stop Shop Cos. v. East Haven, 210 Conn. 233 (1989). It may be true, as the Plaintiff claims, that the average sales prices on and around the assessment dates in question are creating what seems to be a disproportionality in the assessment ratio of the Meadows in comparison with other residential properties in the Town of Enfield. But this is due to fluctuation of the realty market, and in particular the condominium market. "Because the remedy for the changing market values is set forth in General Statutes 12-62, we conclude that use of the average ratio approach is not applicable to discrepancies in valuation which arise during the ten year period between valuations." Uniroyal, supra, 182 Conn. at 630.
The Court finds that the requirements of 12-64 were followed by the Town of Enfield.
3. "Conn. Gen. Stat. 12-55 requires the tax assessment lists CT Page 6905 of a particular town to be equalized, if necessary, by increase or decrease in the valuation of property on such lists unrelated to decennial valuation. Where the defendant assessor and Board of Tax Review refuse to exercise such duty to equalize, the Court shall be empowered to exercise its discretion and grant such justice and equitable relief as the Court may determine pursuant to Conn. Gen. Stat. 12-118."
The Plaintiff claims that Lerner Shops allows for judicial intervention where any circumstances indicate that a disproportionate share of the tax burden is being thrust upon a taxpayer. The plaintiff again cites Uniroyal to authorize the use of average sales-assessment ratio evidence as a basis for determining the disproportionality. However, the previous discussion has made clear that this result was not the Court's intention in these cases. In addition, the average sales-assessment ratio evidence that would be of use as an evidentiary tool would necessarily be that of the average sales data used at the time of revaluation of initial valuation of the property in question, and not that of the average sales data of the subsequent years between decennial revaluations. Only then would a true indication of uniformity of percentage applied to the real property for taxation purposes by a municipal assessor be formed. For example, if property A valued in 1980 at $200,000 and property B valued at the same time at $150,000, were assessed at 50%, their assessment values would be $100,000 and $75,000, respectively. But if a change in the market for these properties occurred in 1983 and rendered them at a fair market value of $175,000 each, their assessment values of $100,000 and $75,000 would remain the same, for they are being based on the average sales data for 1980. Now, the owner of property A might believe that he is burdened with a disproportionate share of the tax burden based on the average sales-assessment ratios on the date of the 1983 assessment, but this would not be true. The only reason for the change in the ratio has been the change in the market, and the legislature and the Court has made clear that the only remedy for this is town wide revaluation every ten years. See, Conn. Gen. Stat. 12-62; Uniroyal, supra; Ralston, supra; and Stop Shop, supra. "The decennial revaluation of real property mandated by 12-62 is the exclusive remedy provided by the legislature for variations in the effect of market conditions on different parcels." Ralston,203 Conn. at 437. Also, "Because the remedy for changing market values is set forth in General Statutes 12-62, we conclude that use of the average ratio approach is not applicable to CT Page 6906 discrepancies in valuation which arise during the ten year period between valuation. See Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 678-79, 154 A.2d 608 (1959)." Uniroyal, Inc. v. Board of Tax Review, supra, 629-30. Stop 
Shop Cos. v. East Haven, 210 Conn. 233, 242 (1988). In fact, Ralston discusses the fact that the plaintiffs in Uniroyal were denied relief based on the disproportionality argument. The Plaintiff neglects to point out that the Court in Ralston stated that "[i]n the context of this case however, this distinction has no significance." Ralston, 203 Conn. at 440. That observation applies to this case as well. As Ralston stated, "[a]lthough the plaintiffs here rely upon different grounds in challenging their tax assessments, they seek the same relief requested by the plaintiffs and denied by this Court in Uniroyal II, an interim revaluation of their property." Id.
The plaintiff then turns to 84 Century Limited Partnership v. Board of Tax Review of the Town of Rocky Hill, 207 Conn. 250
(1988), as evidence of its claim that a town assessor should be required under Conn. Gen. Stat. 12-55 to make interim adjustments in property assessments in order to achieve administratively a fair and equal assessment for all taxpayers. However, the Plaintiff clearly misinterprets the holding in 84 Century. The Court makes clear that although the previous decisions of Ralston, Uniroyal, and Stop Shop determine that an assessor is not required under 12-55 to adjust property assessments between decennial valuations, assessors may do so under appropriate circumstances. "We conclude that although an assessor, absent unusual circumstances that do not exist in this case, cannot be required to make such an interim revaluation of real property, he may do so in accordance with 12-55, under appropriate circumstances." 84 Century, 207 Conn. at 251.
Further discussion in that case reveals the Court is only concerned with permissive use by an assessor of 12-55:
 "It is not necessary to consider the defendant's claim that there is conflict between Ralston Purina Co. and Uniroyal, Inc., for in the context of this case this court's quotation in Ralston Purina Co. (p. 438) from Uniroyal, Inc., (p. 629) that the procedure in 12-62
`need only be available once each decade' is dicta. The language `need only be available' refers to a mandatory reassessment. That case has no bearing on the question of permissive interim revaluation as a CT Page 6907 power of the assessors under 12-55, nor did Uniroyal, Inc., on which Ralston Purina Co. relied, concern the question involved in this case." Id. at 259 (emphasis in original).
With the Court deciding that while there is no requirement under12-55 to revalue property by an assessor, there is permission to do so in appropriate circumstances, they proceed to determine that a substantial increase in real property value between decennial revaluations is an appropriate circumstance. "We conclude that the assessors in Rocky Hill did have the power under 12-55 to adjust a real estate assessment in the interim years between decennial revaluations on the ground that a sale of the property in question showed that the property had greatly increased in value in relation to other properties in the town." Id. at 263.
From this determination by the Court, the legislature responded by passing Conn. Gen. Stat. 12-63d, which disallows a change in the assessed value of a parcel of real estate solely on the basis of the sale price of that parcel.[1] However, this legislation in no way affects the holding of 84 Century, in construing Raltson, Uniroyal, and Stop Shop to show that there is no requirement contained in 12-55 that assessors adjust values of property between decennial valuations, but merely permission to do so "if necessary",[2] except for the adjustments "required by law."[3]
The plaintiff further claims that the assessors failure to adjust the assessed value of the Meadows to a level that is equivalent with other similarly situated real estate constitutes a violation of the equal protection provision of Article First,20 of the Connecticut Constitution, or 1 of theFourteenth Amendment of the United States Constitution. This claim may be true if the plaintiff was successful in proving that it has been or will be unjustly taxed by the Town of Enfield, which in my view it has not done.
4. "Conn. Gen. Stat. 12-118 requires that any reduction to the assessed value of the applicant's property, as it appears on the grand list of October 1, 1990, shall be the revised assessed value for subsequent assessment years and abatement of any excess tax shall be made accordingly."
This is true and uncontested by the defendant. CT Page 6908
5. "Specific increases in the mill rate by the Town of Enfield, and the earmarking of the same for trash removal, a service which the applicant does not receive, constitutes a taking of property without due process of law in violation of Article First, 8, of the Connecticut Constitution, or 1 of theFourteenth Amendment of the United States Constitution.
The plaintiff claims it does not receive trash collection services, and therefore any required payment of tax for these specific services is a taking of property in violation of the Connecticut and United States Constitutions. The plaintiff, however, is not ineligible to receive these services, but, in fact, is eligible to receive the services if it complies with certain requirements of the Town of Enfield. These include placing the trash in proper receptacles on a public street.
If the governmental action does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate governmental purpose in order to withstand an equal protection challenge. Trimble v. Gordon, 430 U.S. 762 (1977); Pierce v. Albanese,144 Conn. 241 (1957). Here the rational basis for treating the plaintiff differently from taxpayers in Enfield who receive trash removal services is not that they are condominium owners, but rather that they are located on a private road which is not owned or maintained by the Town of Enfield, as well as that the Meadows condominium units dispose of their trash in dumpsters, which the Town of Enfield does not service for any residents. The defendant Town of Enfield provided testimony that it possesses no equipment which would enable it to provide collection of trash from dumpsters to the residents of the Town of Enfield, which the plaintiff does not contest.
There was additional testimony provided by the defendant that certain condominium owners who place their trash on public roads are provided trash removal services, so long as the trash is not placed in dumpsters. The claim by the plaintiff that they do not receive trash removal services, and therefore are being subject to a taking of property without due process of law, in violation of the Connecticut and United States Constitutions is without merit. The plaintiff is not ineligible to receive such services, but rather, chooses not to do so due to the manner and location of its trash disposal, just as taxpayers who send their children to private schools have not CT Page 6909 been subject to a taking of property without due process of law due to the fact that they are still taxed for public shcool [school] funding.
CONCLUSION
In accordance with the previous discussion, I conclude that the plaintiff has failed in its proof in claiming that it bears a disproportionate burden of taxation in the Town of Enfield for the assessment dates of October 1, 1990; October 1, 1991; and October 1, 1992. Therefore, it is not a requirement under Conn. Gen. Stat. 12-55 for the assessor of the Town of Enfield to make any adjustment in the assessment value of the real property of the plaintiff for those assessment dates. Any disproportionality of average sales-assessment rates of the plaintiff's real property on the assessment dates in question, is based on fluctuation of the realty market alone since the last townwide revaluation, and need only be redressed at the next revaluation under Conn. Gen. Stat. 12-62.
In addition, the plaintiff fails in its claim that the increase of the mill rate in the Town of Enfield, for the purpose of trash collection services which the plaintiff does not receive, is a taking of property without due process of law in violation of the Connecticut and United States Constitutions. The plaintiff has not established that it is ineligible to receive such services solely because it is a condominium association which is not rationally related to any legitimate governmental purpose. On the contrary, it has been sufficiently established that the plaintiff does not receive trash collection services due to the fact that it places its trash in a dumpster on a private road, which the Town of Enfield will not collect from any of its residents who dispose of trash in that manner. Therefore, the plaintiff is treated no differently from any other resident of the Town of Enfield, and may receive trash collection services from the Town of Enfield, if it complies with the Town of Enfield's trash collection requirements.
For the foregoing reasons, Judgment is entered for the Defendant on all counts.
Walsh, J.